NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 18

No. 2018-274

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Rutland Unit, |
| | Criminal Division |
| | |
| Brandon Rolls | September Term, 2019 |

Thomas A. Zonay, J.

Ian C. Sullivan, Rutland County Chief Deputy State's Attorney, Rutland, for Plaintiff-Appellee.

Allison N. Fulcher of Martin & Delaney Law Group, Barre, for Defendant-Appellant.


PRESENT: Reiber, C.J., Robinson, Eaton and Carroll, JJ., and Skoglund, J. (Ret.), Specially Assigned

¶ 1. **REIBER, C.J.** Following a jury trial, defendant Brandon Rolls was acquitted of the charged offense of aggravated sexual assault of a minor but convicted of the lesser-included offense of sexual assault. On appeal, he argues that the trial court erred in its jury instructions, mandating reversal of his conviction and sentence. We affirm.

## I. Facts

¶ 2. The State charged defendant with aggravated sexual assault of a minor. Following a four-day trial, the State requested a jury instruction on the lesser-included offense of sexual assault. Defense counsel objected, arguing that defendant had the right to waive a lesser-included-offense instruction. The trial court overruled the objection, explaining that it must provide a lesser-

included-offense instruction upon either party's request if the evidence supports the instruction, as it did in this case. Defense counsel did not object to the language the court proposed for the lesser-included-offense instruction. The court subsequently instructed the jury as follows:

> If you decide that the State has not proven each of the essential elements of aggravated sexual assault, then you must consider whether [defendant] is guilty of the offense of sexual assault. Or if you are unable to agree upon a verdict considering the charge of aggravated sexual assault after all reasonable efforts to reach a unanimous verdict, then you may move on to consider the offense of sexual assault.

¶ 3.    After deliberating from around 5:00 p.m. to 7:00 p.m., the jury sent a note to the court stating, "At this time we cannot give you a verdict." The court responded in writing by asking the jury to "clarify the intent of the note." The court further stated in its response:

> [I]n the event that the note is intended to indicate an inability to reach a unanimous verdict, the court would ask that you discuss whether you believe that further deliberations may result in a unanimous verdict . . . as well as discuss whether you believe that ending deliberations at this time and returning to deliberate in the morning may result in a unanimous verdict. If you do not believe that further deliberations will assist you in arriving at a unanimous verdict, then you should report this to the court.

Neither party objected to this response.

¶ 4.    Around ten minutes later, the jury sent a note to the court stating, "We cannot come to a unanimous verdict and we don't feel we will even with further deliberations." Defense counsel initially argued that the court should not respond with further instruction to the jury but instead should have the jury brought out to announce they could not reach a verdict and declare a mistrial. However, after further discussion, the court proposed a supplemental instruction to which neither party objected. The court accordingly had the jury return to the courtroom and charged them as follows:

> Your verdict must be unanimous. It is either guilty or not guilty by twelve people. If in your good consciences, you cannot reach a unanimous verdict then you report to the court that you cannot do so and you become known as a hung jury. In other words, you are

2

saying that you cannot reach a unanimous verdict one way or the other.

As I told you before, each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, you shouldn't hesitate to reexamine your own views and change your opinion if you are convinced that it is wrong, but do not surrender your honest opinion as to the weight or effect of the evidence solely because of the opinions of your fellow jurors or for the purpose of returning a verdict.

If you can reach a unanimous verdict, do so. But do not give up your individual judgment as judges of the facts in this case. Take as much time as you need to discuss the case and the court is going to send you back to deliberate further.

Again, if you would like to suspend deliberations at this time and reconvene . . . tomorrow morning for deliberations to resume, we will proceed in that manner. Should you wish to continue further into the evening with deliberations, we can also order food for you if you so request.

But at this time, the court would ask that you return to deliberate for an additional period of time and your foreperson will notify us in accordance with the court's instruction as to where things stand.

The jury then reconvened for around five minutes, after which they sent the court a note stating that they wanted to leave at that time and return for further deliberations in the morning. The next morning, after deliberating for around one hour, the jury declared defendant not guilty of aggravated sexual assault and guilty of the lesser-included charge of sexual assault.

¶ 5. Defendant filed a motion for a new trial pursuant to Vermont Rule of Criminal Procedure 33, which the trial court denied. Defendant was sentenced to serve ten to twenty years in prison. He now appeals his conviction and sentence.

¶ 6. Defendant makes two arguments on appeal: (1) the trial court's instruction as to when the jury could consider the lesser-included offense, called the "transition" instruction, was in error; and (2) under the circumstances of the case, the court impermissibly coerced the jury to return a verdict when it provided a supplemental instruction that the jury continue deliberations.

## II. Lesser-Included-Offense Instruction

¶ 7. We first address defendant's challenge to the trial court's transition instruction. "A defendant is entitled to jury instructions that are full, fair, and correct on all issues, theories, and claims presented by the evidence." State v. Swift, 2004 VT 8A, ¶ 12, 176 Vt. 299, 844 A.2d 802 (quotation omitted). "In reviewing jury instructions, the relevant inquiry is whether the instructions as a whole were misleading or inadequate to aid the jury's deliberations." State v. Trombley, 174 Vt. 459, 460, 807 A.2d 400, 403 (2002) (mem.) (quotation omitted). Defendant did not object to the language of the transition instruction in the trial court, so we review for plain error. See State v. Yoh, 2006 VT 49A, ¶¶ 36, 39, 180 Vt. 317, 910 A.2d 853. "Error will be assigned only when the entire charge undermines our confidence in the verdict, and only in extraordinary cases will we find plain error." State v. Lambert, 2003 VT 28, ¶ 14, 175 Vt. 275, 830 A.2d 9 (quotation omitted).

¶ 8. Defendant argues that the trial court erred in providing the jury with both a "hard" and a "soft" transition instruction and that the court's error caused him prejudice. A "hard" transition instruction directs jurors to consider a lesser-included offense only if they agree that the defendant was not guilty of the charged offense; this is also called a "more rigorous" transition instruction or an "acquittal first" instruction. See State v. Powell, 158 Vt. 280, 283, 608 A.2d 45, 46-47 (1992) (describing "more rigorous" charge as one that instructs jury "to move on to the lesser offenses only if it had a reasonable doubt as to the elements of the greater"); Commonwealth v. Roth, 776 N.E.2d 437, 449 n.14 (Mass. 2002) (describing instruction that "prohibit[s] the jury from even considering any lesser included offense unless and until they have unanimously decided that the defendant is not guilty of the offense as charged" as "hard transition instruction" (emphasis and quotation marks omitted)); State v. Finneman, 2018 ND 203, ¶ 11, 916 N.W.2d 619 (describing instruction that "requires an acquittal of the offense charged before consideration of lesser-included offenses" as "acquittal first instruction" (quotation marks and quotation omitted)).

4

A "soft" transition instruction informs the jury that they may consider the lesser-included offense if they cannot agree on the greater offense. People v. LePage, 397 P.3d 1074, 1077 (Colo. App. 2011) (explaining that "soft transition" does not require jury to "unanimously acquit the defendant of the greater offense before considering the lesser included offenses" (quotation marks omitted)). A soft transition instruction may also be called a "less rigorous," "reasonable efforts," or "unable to agree" instruction. See Powell, 158 Vt. at 283, 608 A.2d at 47 (describing "less rigorous" charge as one that "allows the jury to move on to lesser-included offenses if it is unable after all reasonable efforts to reach verdict on the greater offense" (quotation omitted)); Green v. State, 80 P.3d 93, 95 & n.12 (Nev. 2003) (per curiam) (describing instruction that "jurors . . . may consider a lesser-included offense if they have reasonably tried, but failed, to reach a verdict on the primary charge" as "unable to agree instruction" or "reasonable efforts instruction" (quotation marks and quotation omitted)).

¶ 9.     We conclude the trial court did not err in providing both the more rigorous and less rigorous instructions, rather than one or the other, in the absence of defendant's request.[1] We have previously held that either transition instruction is correct as a matter of law. Powell, 158 Vt. at 284, 608 A.2d at 47 (explaining this Court has adopted rule in United States v. Tsanas, 572 F.2d 340, 346 (2d Cir. 1978), which held that "neither charge [is] wrong as a matter of law" (quotation omitted)). The defendant has the right to choose which instruction the court will provide. Id. (reasoning defendant should have right to choose transition instruction because "it is [defendant's] liberty that is at stake" (quotation and alteration omitted)); see also State v. Duff, 150 Vt. 329, 336, 554 A.2d 214, 218 (1988) (explaining that defendant who seeks acquittal may benefit from hard transition instruction but defendant who seeks conviction on lesser-included offense may benefit

_____

[1] We have not previously addressed whether a trial court may provide both transition instructions. In State v. Bolaski, 2014 VT 36, 196 Vt. 277, 95 A.3d 460, the trial court provided both transitional instructions. Neither the parties nor the Court raised whether that was error, and we did not consider the issue.

5

from soft transition instruction), overruled on other grounds by State v. Congress, 2014 VT 129, 198 Vt. 241, 114 A.3d 1128, and overruled in part by Powell, 158 Vt. 280, 158 A.2d 45. But where, as here, the defendant does not choose either transition instruction, it is within the discretion of the trial court to decide which instruction to provide. Powell, 158 Vt. at 284, 608 A.2d at 47. Given that defendant here did not request either instruction, it was within the court's discretion to provide both. In doing so, the court accurately stated the law, see Swift, 2004 VT 8A, ¶ 12, and did not mislead the jury, see Trombley, 174 Vt. at 460, 807 A.2d at 403. The court's instruction does not "undermine[] our confidence in the verdict." Lambert, 2003 VT 28, ¶ 14 (quotation omitted). We conclude there was no error, and thus no plain error. See Yoh, 2006 VT 49A, ¶ 39 (explaining that plain-error standard requires an error).

¶ 10. Defendant claims the instruction caused him prejudice because he was seeking acquittal, and therefore only the more rigorous instruction was warranted. See Duff, 150 Vt. at 336, 554 A.2d at 218 (reasoning that defendant seeking acquittal will benefit from more rigorous instruction). There was no prejudice. Defendant had the right to claim whichever transition instruction he determined would be to his advantage, and he did not. See Powell, 158 Vt. at 284, 608 A.2d at 47. He cannot now claim prejudice when, in the absence of defendant's choice, the court provided instructions to the jury that were legally correct and not misleading. See Swift, 2004 VT 8A, ¶ 12; Trombley, 174 Vt. at 460, 807 A.3d at 403; cf. State v. Hunt, 150 Vt. 483, 490, 555 A.2d 369, 374 (1988) (explaining that defendant's argument that venue change "was detrimental to his defense strategy" was insufficient in itself to show prejudice because it did not deprive him of right to fair trial). The trial court did not err in providing both transition instructions in the absence of defendant's request.

### III. Supplemental Jury Instruction to Continue Deliberations

¶ 11. Next we consider defendant's claim that the trial court erred in providing a supplemental instruction that the jury continue deliberations. Specifically, defendant argues that

the court gave the jury an "<u>Allen</u> charge," which, under the circumstances of the case, impermissibly coerced the jury into returning a verdict.

## A. Legal Framework

¶ 12.   The term "<u>Allen</u> charge" derives from the U.S. Supreme Court case <u>Allen v. United States</u>, 164 U.S. 492 (1896), which upheld a supplemental jury instruction to continue deliberations.  The Court did not quote the instruction at issue but summarized it as follows:

> These instructions . . . were, in substance, that in a large proportion of cases absolute certainty could not be expected; that, although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor, and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself.  If, u[p]on the other hand, the majority were for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority.

<u>Id</u>. at 501.  The Court upheld the instructions, reasoning that "[t]he very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves" and it could not "be the law that each juror should not listen with deference to the arguments, and with a distrust of his own judgment, if he finds a large majority of the jury taking a different view of the case from what he does himself."  <u>Id</u>. at 501-02.

¶ 13.   Other courts later criticized the instruction in <u>Allen</u> as impermissibly coercive.  See, e.g., <u>State v. Marsh</u>, 490 P.2d 491, 494 (Or. 1971) ("In recent years the 'Allen charge' has been the subject of considerable discussion, including increasing criticism upon the ground that it is improperly coercive."); see also American Bar Ass'n, Standards for Criminal Justice § 15-5.4 cmt. (3d ed. 1996) [hereinafter ABA Standard] ("The <u>Allen</u> decision was generally followed until publication of Standard 15-5.4 in 1968.  Since that time, the clear trend has been for various

jurisdictions to substitute the less coercive charge recommended by these standards for the more coercive <u>Allen</u> charge."). Courts were concerned that the <u>Allen</u> charge pressured jurors into reaching a verdict even if they "must compromise [their] convictions to do so" and placed a particular burden on the minority to "yield" to the judgment of the majority. <u>State v. Perry</u>, 131 Vt. 337, 340, 306 A.2d 110, 112 (1973); see also <u>Ransey v. State</u>, 594 P.2d 1157, 1158 & n.2 (Nev. 1979) (stating that "Allen charges have been condemned because they (1) coerce the minority juror or jurors to acquiesce to the will of the majority by encouraging the minority to reconsider their position in light of the fact that the majority disagrees with them; and (2) coerce a verdict by implying that a costly new trial will be necessitated should the jury not reach a unanimous decision" and collecting cases).

¶ 14.    As a result, courts generally have modified or replaced the traditional <u>Allen</u> charge with alternative language that avoids the pitfalls of the original <u>Allen</u> charge.  See, e.g., <u>Spears v. Greiner</u>, 459 F.3d 200, 205 (2d Cir. 2006) (approving of modified <u>Allen</u> charge that "directs jurors to consider the views of other jurors" and includes "specific cautionary language reminding jurors not to abandon their own conscientious beliefs"); <u>Fields v. State</u>, 487 P.2d 831, 841-42 (Alaska 1971) (holding that "coercive tendency of the Allen charge requires that its use be discontinued in this state" and requiring that any jury instruction to continue deliberations must comply with ABA standards); see also W. Foster, Annotation, <u>Instructions Urging Dissenting Jurors in State Criminal Case to Give Due Consideration to Opinion of Majority (Allen Charge)—Modern Cases</u>, 97 A.L.R.3d 96, §§ 3-8 (1980) (listing federal and state courts that have modified or abandoned traditional <u>Allen</u> charge).

¶ 15.    This Court has rejected the traditional <u>Allen</u> charge and adopted ABA Standard 15-5.4 as a noncoercive supplemental jury instruction. <u>Perry</u>, 131 Vt. at 340, 306 A.2d at 112 (holding

8

jury instruction to continue deliberations must adhere to ABA Standard 15-5.4).[2]  ABA Standard

15-5.4(b) directs that "[i]f it appears to the court that the jury has been unable to agree, the court

may require the jury to continue deliberations and may give or repeat an instruction as provided in

section (a)."  ABA Standard 15-5.4(a) states:

> (1) that in order to return a verdict, each juror must agree thereto;
>
> (2) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;
>
> (3) that each juror must decide the case for himself or herself but only after an impartial consideration of the evidence with the other jurors;
>
> (4) that in the course of deliberations, a juror should not hesitate to reexamine his or her own views and change an opinion if the juror is convinced it is erroneous; and
>
> (5) that no juror should surrender his or her honest belief as to the weight or effect of the evidence solely because of the opinion of the other jurors, or for the mere purpose of returning a verdict.

The Commentary to ABA Standard 15-5.4 provides an illustration of an appropriate instruction,

as follows:

> The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto.  Your verdict must be unanimous.
>
> It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and

---

[2]  We adopted the ABA standard in <u>Perry</u>, 131 Vt. at 340, 306 A.2d at 112, citing the ABA Project on Minimum Standards for Criminal Justice, Trial by Jury, § 5.4, Commentary.  That publication has since been revised, and nearly identical language can now be found in ABA Standard 15-5.4.  See ABA Standard 15-5.4 (explaining under "History of Standard" that this standard "has been renumbered and changed in style only" from prior version); see also <u>Fields</u>, 487 P.2d at 842 (quoting American Bar Association Project on Minimum Standards for Criminal Justice, Trial by Jury, showing its language is nearly identical to ABA Standard 15-5.4); Foster, <u>supra</u>, § 2(a) (quoting ABA Standards Relating to Trial by Jury § 5.4, showing language nearly identical to ABA Standard 15-5.4).

change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Such an instruction will not be inherently coercive. Perry, 131 Vt. at 340, 306 A.2d at 112 (approving instruction that adheres to ABA standard); see also Mayfield v. State, 490 A.2d 687, 690 (Md. 1985) (holding that "an Allen-type charge in the form recommended by the ABA is balanced and not inherently coercive").

¶ 16. Additionally, in deciding whether a supplemental jury instruction is coercive, courts may consider not only the language of the instruction but also its surrounding circumstances. See State v. Garrett, 426 P.3d 164, 167 (Or. Ct. App. 2018) (considering "both the form of the instruction and the factual context to determine whether the instruction was coercive"); see also ABA Standard 15-5.4 cmt. (discussing circumstances under which charge to continue deliberations could be coercive); cf. Perry, 131 Vt. at 340, 306 A.2d at 112 (holding that "[w]hether, in a given case, reversible error can be predicated on the use of [an Allen charge] must be tested by the circumstances"). Those circumstances may include the timing of the instruction and verdict, errors in the proceedings, and whether the court has imposed an artificial time limit on the length of deliberations. See Hooks v. Workman, 606 F.3d 715, 748 (10th Cir. 2010) (relying on "backdrop of misconduct" by prosecution and other "contextual facts" to determine that Allen charge was coercive); Davis v. Armacost, 168 A.3d 1112, 1129 (Md. Ct. Spec. App. 2017) (explaining that courts "have roundly rejected the imposition of such [time] limits, finding them unduly coercive" and listing cases), rev'd, 200 A.3d 859, 880-81 (Md. 2019) (explaining that "[w]hether informing a jury as to when its deliberations will end is unduly coercive . . . depends on the circumstances of the case" and holding trial court's time-related instruction was not coercive); Garrett, 426 P.3d at 167 (considering, among other factors, "the amount of time that the jury deliberated before and after the instruction was issued" in deciding whether instruction was impermissibly coercive).

10

¶ 17. In summary, a trial court may issue a supplemental jury instruction to encourage a jury to continue deliberations when they cannot agree on a verdict. Perry, 131 Vt. at 340, 306 A.2d at 112. Providing such an instruction is a matter within the court's sound discretion. See State v. West, 151 Vt. 140, 142, 557 A.2d 873, 875 (1988) ("The necessity, extent and character of supplementary instructions requested by a jury are matters that are within the sound discretion of the trial court."); Garrett, 426 P.3d at 166-67 (stating that "trial courts have discretion as to whether, and how, to issue supplemental instructions after deliberations have begun"). However, the court may not issue a supplemental instruction to continue deliberations that coerces the jury into arriving at a verdict. See Perry, 131 Vt. at 340, 306 A.2d at 112. The trial court may not issue a traditional Allen charge or any instruction that substantially deviates from ABA Standard 15-5.4. See id. An instruction that adheres to ABA Standard 15-4.5 will not be inherently coercive. See id. But whether such an instruction is coercive in a particular case will depend on the facts of that case. See Garret, 426 P.3d at 167; ABA Standard 15-5.4 cmt.

## B. Analysis

¶ 18. Defendant argues here that the trial court erred in providing an Allen charge, impermissibly coercing the jury into returning a verdict. We disagree. The court did not issue a traditional Allen charge. Rather, it was a permissible, noncoercive charge that mirrored the ABA standards. The trial court told the jurors:

> [Y]ou shouldn't hesitate to reexamine your own views and change your opinion if you are convinced that it is wrong, but do not surrender your honest opinion as to the weight or effect of the evidence solely because of the opinions of your fellow jurors or for the purpose of returning a verdict.

The court also directed the jurors that "[i]f you can reach a unanimous verdict, do so. But do not give up your individual judgment as judges of the facts in this case." This language adheres to that of ABA Standard 15-5.4, which states that "jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual

11

judgment" and that "a juror should not hesitate to reexamine his or her own views and change an opinion if the juror is convinced it is erroneous," but "no juror should surrender his or her honest belief as to the weight or effect of the evidence solely because of the opinion of the other jurors, or for the mere purpose of returning a verdict." ABA Standard 15-5.4(a). The language of the instruction was proper and not inherently coercive. See Perry, 131 Vt. at 340, 306 A.2d at 112.

¶ 19. Defendant buttresses his argument by pointing to the jury's "deadlock," how quickly the jury returned a verdict after receiving the charge, and the transition instruction. As stated previously, a charge may be coercive "in its context and under all the circumstances," even if its language is not inherently coercive. Hooks, 606 F.3d at 741-42 (quotation omitted). Whether the jury has "deadlocked" does not suggest coercion in itself. An instruction to continue deliberations arises only when a jury cannot agree; if "deadlock" made such a charge coercive, then no instruction to continue deliberations could withstand scrutiny. See ABA Standard 15-5.4(b) (titling standard as "Length of deliberations; deadlocked jury" and providing that court may provide supplemental jury instruction to continue deliberations "[i]f it appears to the court that the jury has been unable to agree").

¶ 20. The surrounding circumstances in this case do not indicate that the supplemental charge was coercive. The jury had deliberated for only two hours, reviewing evidence from a four-day trial, at the time they indicated they could not agree. See State v. Kelley, 517 N.W.2d 905, 909 (Minn. 1994) (stating that " '[t]he reasonableness of the deliberation period . . . depends on . . . the length of the trial,' " among other factors (quoting ABA Standard 15-5.4 cmt.)). It was not unreasonable to require the jury to continue deliberations. Nor does the jury's verdict the next morning, after an additional hour of deliberations, suggest coercion. Accord State v. Rodriguez, 822 A.2d 894, 903 (R.I. 2003) (reasoning that "jury continued deliberating for more than an hour" after receiving Allen charge, which "undercut defendant's suggestion that a coercive Allen charge produced the verdict"). Finally, the transition instruction did not make the court's instruction to

continue deliberations coercive.  Cf. <u>Duff</u>, 150 Vt. at 338, 554 A.2d at 219 (explaining that court's erroneous jury instructions "would not alone constitute plain error" but "the totality of the improprieties" showed unfairness in defendant's trial and mandated reversal).  The transition instruction was not in error, and it could not make coercive an otherwise entirely proper supplemental instruction.  There was no error in the trial court's charge to continue deliberations.

   <u>Affirmed</u>.

          FOR THE COURT:


          _____

          Chief Justice